## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOURYON USA LLC<br><br>Plaintiff,<br><br>v.<br><br>ALOFT MEDIA, LLC; GEORGE STREET PARTNERS; TODD SCHMIDT; and GEORGE ANDREW GORDON,<br><br>Defendants. | C.A. No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NOURYON USA LLC (hereinafter "Nouryon" or "Plaintiff"), files this Declaratory Judgment Complaint against Defendants, ALOFT MEDIA, LLC (hereinafter "Aloft Media"), GEORGE STREET PARTNERS, TODD SCHMIDT (hereinafter "Schmidt"), and GEORGE ANDREW GORDON (hereinafter "Gordon") (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory judgment of non-infringement and invalidity of United States Patent No. 10,372,793 (the "Asserted Patent") arising under the patent laws of the United States, Title 35 of the United States Code.

2.     Aloft Media is a non-practicing entity trying to pressure Nouryon into paying for a worthless license for alleged patent infringement of the Asserted Patent, which is a continuation of a patent that was issued well before the 2016 Supreme Court decision in Alice, and would undoubtedly not be issued today. A true and correct copy of the Asserted Patent is attached as

57333378.1

**Exhibit 1**.

3.      Beginning on January 2, 2025, and through communications thereafter, Defendants have asserted that Nouryon's website,  https://www.nouryon.com/, infringes the Asserted Patent and offered a license to the Asserted Patent. As explained in greater detail below, Nouryon does not infringe any valid or enforceable claim of the Asserted Patent, which merely claims a process for drop-down menus on websites - hardly a new or novel invention.

4.      As explained in greater detail below, the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et. seq.,* including particularly, 35 U.S.C. §§ 101, 102, 103, 112, 120, and/or 132.

5.      The Asserted Patent is also unenforceable pursuant to the doctrines of inequitable conduct and prosecution laches, resulting from conduct during prosecution.

6.      Nouryon brings this action seeking: (i) a declaration under the Declaratory Judgments Act (28 U.S.C. § 2201) that Nouryon has not infringed, and does not infringe, any valid or enforceable claim of the Asserted Patent; (ii) a declaration under the Declaratory Judgments Act (28 U.S.C. § 2201) that the Asserted Patent is invalid and/or unenforceable.

## THE PARTIES

7.      Plaintiff, Nouryon USA LLC, is a Delaware limited liability company registered at the Corporation Service Company at 251 Little Falls Drive Wilmington, DE 19808.

8.      On information and belief, Defendant, Aloft Media, LLC, is a Texas limited liability company with an address at 211 West Tyler Street, Suite C-l, Longview, Texas 75601 and its registered agent is listed as George A. Gordon, 211 West Tyler Street, Suite C-l, Longview, Texas 75601.

9.      On information and belief, Defendant, George Street Partners, is an Illinois corporation with a principal office address of 11686 Oak Tree Way, Carmel, Indiana 46032 and its

57333378.1

registered agent is listed as Philip R. Goldberg, 1 Northfield Plaza #300, Northfield, Illinois 60093.

10.     On information and belief, Defendant, Todd Schmidt, is an individual residing at 11686 Oak Tree Way, Carmel, Indiana 46032.

11.     On information and belief, Defendant, George Andrew Gordon, is an individual residing at 6518 Ryeworth Drive, Frisco, Texas 75035.

## JURISDICTION AND VENUE

12.     The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b) because this Complaint states claims arising under Acts of Congress, including the Patent Act, *e.g.,* 35 U.S.C. § 101 *et. seq.*

13.     The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Declaratory Judgments Act (28 U.S.C. §§ 2201 and 2202), in that it involves an actual case or controversy due to Defendants' accusation that Nouryon infringes the Asserted Patent and its licensing demands made to Nouryon.

14.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted or that may be asserted that are so related to claims within the original jurisdiction of this action that they form part of the same case or controversy under Article III of the United States Constitution.

15.     The Court has specific personal jurisdiction over Defendants pursuant to Delaware's Long Arm Statute, 10 Del. C. § 3104 and the Due Process Clause of the Fourteenth Amendment by virtue of Defendants' contacts with Delaware. Defendants have purposefully directed its enforcement activity at Delaware by virtue of their notice letter (later referred to herein as the "Notice Letter") to Nouryon, a Delaware limited liability company, and by partaking in extensive negotiation efforts with Nouryon, as discussed below.

16.     The Court has specific personal jurisdiction over Defendants pursuant to Delaware's

Long Arm Statute, 10 Del. C. § 3104 and the Due Process Clause of the Fourteenth Amendment by virtue of Defendants' contacts with Delaware.  Defendants have purposefully directed its enforcement activity at Delaware by virtue of its notice letter (later referred to herein as the "Notice Letter") to Nouryon, a Delaware limited liability company, and by partaking in negotiation efforts with Nouryon, as discussed below.

17.     Venue is proper in the District of Delaware (hereinafter "this District"), because Plaintiff is a legal in this District and because a substantial part of the events giving rise to this action occurred in this District.

18.     Defendants have purposefully directed their patent enforcement efforts into this District. Aloft Media, George Street Partners, the licensing agent acting on Aloft Media's behalf, Todd Schmidt, and George Andrew Gordon have sent a notice of patent infringement and follow--up licensing communications to Nouryon, a Delaware corporation with its principal place of business in this District.

19.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the forum by targeting Nouryon, a Delaware limited liability company, with unfounded infringement accusations and licensing demands. Additionally, through its licensing agent, George Street Partners and Todd Schmidt, Aloft Media has contacted Nouryon attempting to solicit money for licensing.

20.     Further, this Court has personal jurisdiction over Defendants because Defendants have directed their licensing and business activities to Delaware through their website (https://aloft-media.com/), which is accessible to residents in Delaware.

21.     This Court has personal jurisdiction over Defendant, George Street Partners because it has knowingly and repeatedly directed its licensing activities into this District, including, but not limited to, its unlawful attempt to extract a license from Nouryon. George Street Partners is

identified in the January 2, 2026 Notice Letter as Aloft Media's "authorized licensing agent." By seeking out and threatening litigation against Nouryon, an entity known to exist under the laws of and operate in Delaware, and in this District, George Street Partners should reasonably be expected to be subject to personal jurisdiction in this District.

22.    This Court has personal jurisdiction over Defendant Schmidt because he has knowingly and repeatedly directed licensing activities into this District, including, but not limited to, his unlawful attempt to extract a license from Nouryon. Schmidt is identified in the January 2, 2026 Notice Letter as the agent who would be contacting Nouryon to discuss licensing. Schmidt was involved in communications thereafter made from and to Indiana. By seeking out and threatening litigation against Nouryon, an entity known to exist under the laws of and operate in Indiana, and in this District, Schmidt should reasonably be expected to be subject to personal jurisdiction in this District.

23.    This Court has personal jurisdiction over Defendant Gordon because he has knowingly and repeatedly directed his licensing activities into this District, including, but not limited to, his unlawful attempt to extract a license from Nouryon. Gordon signed the January 2, 2026 Notice Letter. By seeking out and threatening litigation against Nouryon, an entity known to exist under the laws of and operate in Indiana, and in this District, Gordon should reasonably be expected to be subject to personal jurisdiction in this District.

24.    Defendant Schmidt, on behalf of Defendant Aloft, sent additional email communications to Michael Finn, General Counsel of Nouryon, on January 9, 2026 and February 10, 2026.

25.    Nouryon's IP Counsel, Nazish Shabbir, responded to Defendant Schmidt's email communications and the parties had a call to discuss the matter on February 23, 2026.

26.    Each of Defendants' communications with Nouryon, including but not limited to,

the January 2, 2026 Notice Letter, constitutes a separate act sufficient to warrant personal jurisdiction over each Defendant.

27.     Additionally, on information and belief, Defendants have purposefully directed similar enforcement and licensing efforts at multiple entities within the State of Delaware and this judicial district.

28.     This Court can provide the declaratory relief brought in this Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201. An actual case and controversy exists at least because Nouryon does not infringe and has not infringed any of the claims of the Asserted Patents, and Defendants have accused Nouryon of infringing the Asserted Patents. Defendants' actions have created a real, live, immediate, and justiciable case or controversy between Defendants and Nouryon.

29.     On information and belief, Defendants have negotiated licensing agreements with several entities in the State of Delaware and/or this judicial district.

30.     For these reasons, the Court's exercise of personal jurisdiction over Defendants, comports with due process and is proper under governing precedent.

**FACTUAL BACKGROUND**

31.     Nouryon is a global leader in specialty chemicals and produces a wide range of products and solutions ranging from bleaching and oxidizing chemicals to polymers and processing chemicals.

32.     Nouryon operates https://www.nouryon.com/, including all the web pages comprising the site (collectively, the "Accused Nouryon Website"). A print-out of the home page of the Accused Nouryon Website is attached as **Exhibit 2.** Nouryon uses the Accused Nouryon Website to engage with the public, including customers and potential customers, as well as to market and sell its chemical services and solutions.

6

57333378.1

33.     On January 2, 2026, Aloft Media sent a letter signed by Gordon, a claim chart, and a Notice of Possible Infringement and Offer of License letter to Nouryon (collectively, the "Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as **Exhibit 3.**

34.     In the Notice Letter, Aloft Media: (i) claims to be the owner of the Asserted Patent, (ii) accuses Nouryon of infringement of the Asserted Patent, (iii) identifies Nouryon's website as an allegedly infringing instrumentality, (iv) provides a brief outline of alleged conduct attributable to Nouryon and alleges that conduct to be infringing, and (v) provides a claim chart asserting Aloft Media's theory of Nouryon's alleged infringement of the Asserted Patent.

35.     In the Notice Letter, Aloft Media specifically accuses the Accused Nouryon Website of infringing claim 23 of the Asserted Patent and demands that Nouryon execute a patent license agreement and make a license payment to George Street Partners on behalf of Aloft Media to resolve the matter.

36.     In the Notice Letter, Aloft Media identifies George Street Partners as its "authorized licensing agent," identifies Schmidt as "an agent of [George Street Partners]," and indicates that Schmidt "will be contacting [Nouryon] within the next few days" to discuss a licensing agreement.

37.     On information and belief, Aloft contracts with George Street Partners as the exclusive licensor of Aloft Media's patent portfolio.

38.     On information and belief, Aloft Media retained George Street Partners to act as its licensing representative, including in discussions with Nouryon.

39.     Since January 2, 2026, George Street Partners, through Schmidt, has sent email communications to Nouryon on Aloft Media's behalf, attempting to induce Nouryon to sign a patent license agreement.

40.     On information and belief, Aloft Media is a non-practicing entity, colloquially referred to as a "patent troll" or "patent assertion entity." **Exhibit 4**

57333378.1

41.     On information and belief, Aloft Media does not practice the Asserted Patent, which is a method patent for use of drop-down menus on a website. The Asserted Patent is nothing more than a computer-implementation of the organizational structure of a filing cabinet in which opening each drawer (top menu) allows a person to access documents organized by category within the drawer (drop-down menu). Aloft Media's business is predominantly directed to monetizing its patents, including the Asserted Patent, via licensing. In other words, it asserts a dubious patent against actual businesses, trying to squeeze money out of them in hopes that those businesses would rather fork over a payment than spend time engaging in expensive patent litigation.

42.     Aloft Media has an established and well-documented history of filing patent infringement lawsuits following communications of the type sent to Nouryon.

43.     Aloft Media has filed at least (14) lawsuits alleging patent infringement in the Eastern District of Texas.

44.     On information and belief, in each of these lawsuits, Aloft Media would first send letters asserting patent infringement and then, if it did not get what it demanded, initiate litigation in a plaintiff-favorable venue (Eastern District of Texas).

45.     On information and belief, Aloft Media is part of a network of affiliated entities under common control which repeatedly assert patents in coordinated campaigns to intimidate defendants and extract payments based on questionable patents.

46.     On information and belief, this network is made up of at least Aloft Media, LLC, Stragent, LLC, Azure Networks, LLC, Stragent Technologies, LLC, Jenam Tech, LLC, and Boadin Technology, LLC.

47.     On information and belief, each of these entities have and/or had overlapping ownership.

48.     On information and belief, these affiliated entities have brought over one hundred

57333378.1

(100) various patent infringement lawsuits against approximately seventy (70) defendants since 2007.

### *The Asserted Patent*

49.    U.S. Patent No. 10,372,793 (the "Asserted Patent), is titled "Hyperlink with Graphical Cue" and issued from U.S. Application No. 16/243,044, which was filed on January 8, 2019.

50.    The Asserted Patent is purportedly a continuation of U.S. Application. No. 16/056,487, filed August 6, 2018, which in turn is purportedly a continuation of U.S. Application No. 14/224,002, filed March 24, 2014, now issued under U.S. Patent No. 10,042,823, which is purportedly a continuation of U.S. Application No. 12/334,068, filed December 12, 2008, now issued under U.S. Patent No. 8,682,961, which is purportedly a continuation of U.S. Application No. 11/384,957, filed March 20, 2006, now issued under U.S. Patent No. 7,529,795.

51.    The Asserted Patent comprises thirty (30) claims, of which four (4) are independent claims and the remaining twenty-six (26) claims are dependent claims.

52.    According to the Asserted Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." **Exhibit 1** at 1:24-26.

53.    Aloft Media asserted Claim 23 of the Asserted Patent, which reads as follows:

A method, comprising:

providing content for at least one web page, the at least one web page including a set of one or more representations of one or more menu items and a set of one or more representations of one or more hyperlinks, and the at least one web page configured to:

cause display of the set of one or more representations of one or more menu items of the at least one web page, without any images being used in the display of the set of one or more representations of one or more menu items, and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including

one or more textual representations of one or more hyperlinks,

allow receipt of a first input, in the form of hovering, that indicates a selection of one of the set of one or more representations of one or more menu items,

cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks,

allow receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks, and

cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, the destination including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items.

### *The Accused Nouryon Website*

54.     Nouryon operates the Accused Nouryon Website which is used to promote and sell Nouryon's global chemical services and solutions.

55.     The Accused Nouryon Website comprises a collection of individual server-rendered pages that each re-display the site's main menu as part of a shared layout template.

56.      In order to facilitate navigation, the Accused Nouryon Website uses a nested menu, wherein a user can first select one of the top-level menu options in the ribbon (e.g., "Markets") and then, within that category, make a further selection *(e.g.,* "Crop Nutrition"), causing navigation to the requested web page (*e.g., https://www.nouryon.com/markets/crop-nutrition/*).

57.     In response to a user selection, the user is directed to an entirely new page and the original menu is not persistently displayed but instead reloaded as part of the new page's HTML.

58.     The public source code confirms that the website's navigation menu and header are

10

included in the server-rendered HTML for each page and are reloaded in full with every page navigation. There is no use of persistent client-side rendering, SPA routing, or AJAX-based dynamic content loading. **Exhibit 5**.

59.     Throughout the entirety of the user experience on the Accused Nouryon Website, the user is only ever routed amongst various internal web pages that comprise the Accused Nouryon Website. All subsequent web pages the user is enabled to reach from the home page of the Accused Nouryon Website through the nested menu are internal web pages which are part of the Accused Nouryon Website.

**COUNT I**

**DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,372,793**
**(28 U.S.C. § 2201)**

60.     Nouryon repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

61.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et. seq.* Nouryon requests a declaration by the Court that Nouryon has not infringed and does not infringe any valid and enforceable claim of the Asserted Patent, whether literally or under the doctrine of equivalents, and that Nouryon is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the Asserted Patent.

62.     The Accused Nouryon Website does not infringe Claim 23 of the Asserted Patent either literally or under the doctrine of equivalents because, among other reasons, it does not "[c]ause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, **display of a destination** corresponding to the one of the set of one or more representations of one or more hyperlinks, the **destination including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items,** so as to allow use of the set of one or

11

representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items." (emphasis added)

63.    Specifically, the Accused Nouryon Website does not infringe Claim 23 of the Asserted Patent because it does not display a "destination" as that claim term is defined by the specification of the Asserted Patent. The specification of the Asserted Patent describes "destination" as *an external website*. The specification does not provide any disclosure or support for a "destination" being an internal web page of the described website. The Accused Nouryon Website only causes users to be directed *to internal web pages* of the Accused Nouryon Website through its nested drop-down menus.  *See, e.g.,* ¶¶ 54-59.

64.    Further, the Accused Nouryon Website does not infringe Claim 23 of the Asserted Patent because it does not cause "at least a portion of additional content" to be "displayed simultaneously with the set of one or more representations of one or more menu items." As informed by the specification of the Asserted Patent, this claim limitation requires new content to be displayed without navigating away from the first web page, such as a display of destination content in a frame of the web page. For example, the specification describes the prior art use of textual representations of hyperlinks as follows:

> "Textual representations of hyperlinks, however, have certain drawbacks. For example, the textual representation of a hyperlink may not make the destination (anchor) of the hyperlink clear to the user ... To identify the destination of the web page, the user may be required to navigate to that web page (by selecting the hyperlinked text) and view it, or to perform a cumbersome operation such as cutting and pasting the URL of the hyperlink into a document. In either case, it is tedious and time-consuming for the user to identify the destination of the hyperlink and therefore to decide whether to navigate to that destination."

(Ex. 1 at 1:49-65.)

65.    The solution proposed by the Asserted Patent is to identify the "destination"

corresponding to the hyperlinks by displaying "at least a portion of additional content ... so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items." (*Id.* at 23:46-50.)

66.     Put another way, while remaining on the initial web page, a user can hover over or click on one of the hyperlinks in the drop-down menu which causes a visual preview of the hyperlink's destination to be displayed on the initial web page.

67.     This concept is best illustrated by Fig. 5 A of the Asserted Patent (below, emphasis added), which shows a web page 500 (outlined in **red)** comprising a first frame 502a (outlined in **blue)** and a second frame 502b (outlined in **green).**



68.     The first frame 502a shows the top-level menu having a first set of hyperlink representations 504a/506a-h. A user can select (e.g., clicks on or hovers over) one of the first set of hyperlink representations 504a/506a-h to access a drop-down menu having a second set of hyperlink representations 508a-l. When the user selects (e.g., clicks on or hovers over) one of the drop-down menu hyperlink representations 508a-l, the web browser automatically displays the destination of the selected hyperlink in the second frame 502b, which allows the user to view the website destination before navigating away from the initial web page.

69.     The Nouryon Website, however, does not use "frames" to allow users to see a visual representation of the destination of a hyperlink before navigating away from the initial web page. Rather, the Nouryon Website utilizes the prior art textual representations of hyperlinks acknowledged by the Asserted Patent which do not display additional content when a user interacts with the menus.

70.     For example, as shown in the below screenshot from the Nouryon Website, selecting a hyperlink (here, hovering over the "Crop nutrition" hyperlink) from one of the drop-down menus (here, the "Markets" menu) does not allow the user to see a preview of the destination web pages.



(Ex. 2; *see also* https://www.nouryon.com/ (last accessed February 18, 2026).)

71.      To identify the destination of the hyperlinks, the user must click on the hyperlink and navigate away from the initial web page to a new web page within the website. With each navigation, the menu items are reloaded as part of the new web page's HTML. The Accused Nouryon Website does not use any form of persistent client-side rendering, SPA routing, or AJAX-based dynamic content loading to display a preview of the destination web page before the user clicks on the hyperlink and navigates to the destination web page. Accordingly, the Accused Nouryon Website does not infringe Claim 23 of the Asserted Patent.

72.      Additionally, upon information and belief, because of the proceedings in the U.S. Patent & Trademark Office (the "USPTO") during the prosecution of the applications which resulted in the Asserted Patent, as shown by the respective prosecution histories thereof, Aloft Media is estopped to claim a construction of any term of the Asserted Patent that would cause any valid claim thereof to cover or include the Accused Nouryon Website, either literally or under the doctrine of equivalents, at least because the Accused Nouryon Website is merely practicing the prior art textual representations of hyperlinks system acknowledged by the Asserted Patent. *See,*

*e.g.,* Ex. 1 at 1:49-65.

73.     In light of Aloft Media's Notice Letter and the Parties' licensing communications, there exists a substantial, real, and immediate controversy between Nouryon and the Defendants concerning Nouryon's alleged infringement of the Asserted Patent.

74.     Aloft Media's conduct toward Nouryon and its initial demand letter (stating that its claim chart "is not exhaustive of your possible infringements, but rather they are exemplary of patent claims we believe may be presently infringed"), combined with Defendants' aggressive widespread licensing campaign and the history of Aloft Media and its affiliates filing patent infringement lawsuits, clearly demonstrates Aloft Media's intent to litigate the issue.

75.     This controversy warrants the issuance of a declaratory judgment of non-infringement. A judicial declaration is necessary and appropriate so that Nouryon may ascertain its rights and obligations regarding the Asserted Patent.

76.     Nouryon therefore respectfully seeks a judicial declaration that it does not directly, indirectly, or otherwise infringe any valid and enforceable claim of the Asserted Patent.

## COUNT II
## <u>DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,372,793</u>
### (28 U.S.C. § 2201; 35 U.S.C. §§ 101,102,103,112,132)

77.     Nouryon repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

78.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et. seq.,* Nouryon requests a declaration by the Court that the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et seq.,* including 35 U.S.C. §§ 101, 102, 103, 112 and/or 132

79.     The claims of the Asserted Patent because they are directed to an abstract idea and fail to recite an inventive concept sufficient to transform the claimed abstract idea into patent-

eligible subject matter.

80.    Additionally, the claims of the Asserted Patent are invalid because they are anticipated pursuant to 35 U.S.C. § 102 or rendered obvious pursuant to 35 U.S.C. § 103 by prior art patents, printed publications, and/or public use or on-sale activities, alone or in combination, when considered in view of the knowledge of a person of ordinary skill in the art, including but not limited to Votipka, U.S. Patent No. 6,405,238 **(Exhibit 6),** Benson, U.S. Patent No. 7,913,185, **(Exhibit 7)**, Good, U.S. Patent Application No. 2007/0094267 **(Exhibit 8),** Milener, U.S. Patent Application No. 2006/0070012 **(Exhibit 9),** and Sundaresan, U.S. Patent Application No. 2002/0129114 **(Exhibit 10)**.

81.    In this regard, on information and belief, the claimed invention of the Asserted Patent was "in public use or on sale in this country, more than one year prior to the date of the application," by virtue of, *inter alia,* www.instantbull.com (hereinafter the "Instantbull Website"). Accordingly, the claimed invention is anticipated, and the Asserted Patent is therefore invalid, under the public use or on sale bar as prescribed in 35 U.S.C. § 102(b).

### The '957 Application and '140 Provisional Application

82.    As mentioned above, the Asserted Patent claims priority to U.S. Application No. 11/384,957 (hereinafter the "'957 Application"). The '957 Application was filed by Instantbull, LLC on March 20, 2006, together with U.S. Provisional Patent Application 60/784,140 (hereinafter the "'140 Provisional Application"). A true and complete copy of the '957 Application abstract, specification, drawings, and claims as filed is included as **Exhibit 11.** A true and correct copy of the '140 Provisional Application is attached as **Exhibit 12.**

83.    The '957 Application was titled "Message Board Aggregator" and it did not include any disclosure supporting the "Hyperlink with Graphical Cue" claimed in the Asserted Patent. *Rather, the claimed "Hyperlink with Graphical Cue" was disclosed in the '140 Provisional*

*Application*. Critically, the '957 Application did not incorporate figures 5A and 5B that were included in the '140 Provisional Application, and those figures form the basis of the claimed infringement of the Asserted Patent.

84.    The '957 Application tries to remedy this deficiency by claiming priority to and incorporating the '140 Provisional Application via a section titled "Cross Reference to Related Applications" which reads: This application is related to a commonly-owned and concurrently- filed U.S. Provisional Patent Application entitled, "Instantaneous Symbol Lookup" and a commonly-owned and concurrently-filed U.S. Provisional Patent Application entitled "Hyperlink with Graphical Cue," both of which are hereby incorporated by reference.

85.    However, the '957 Application does not properly claim priority to the '140 Provisional Application as required under 35 U.S.C. § 119(e) and 37 C.F.R. § 1.78.

86.    An applicant is not entitled to the benefit of a provisional application unless the applicant has complied with the requirements of 35 U.S.C. § 119(e) and 37 C.F.R. § 1.78. Mere reference to the provisional application in the specification is not sufficient claim for benefit under 35 U.S.C. 119(e). Under 37 C.F.R. § 1.78, a nonprovisional application that claims the benefit of one or more prior-filed provisional applications must contain, or be amended to contain, a reference to each such previously-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number). This reference must be submitted during the pendency of the later filed application. Failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. § 119 to such prior-filed provisional application.

87.    The '957 Application was never amended to include the serial number or application number of any other patent application, including the '140 Provisional Application, and the '957 Application issued as U.S. Patent No. 7,529,795 without including a serial number or application number for the '140 Provisional Application. A true and complete copy of U.S. Patent No.

7,529,795 is attached as **Exhibit 13.** Thus, the '957 Application cannot claim priority to the '140 Provisional Application.

88.     Additionally, the '140 Provisional Application could not be properly incorporated by reference into the '957 Application because the ' 140 Provisional Application is not a U.S. patent or U.S. patent application publication and, therefore, under 37 C.F.R. § 1.57(d), cannot be used to satisfy the disclosure requirements of a later-filed patent application via incorporation.

89.     For these reasons, the '957 Application, and any subsequent continuation applications, cannot rely on the contents of the '140 Provisional Application for any claimed subject matter without such subject matter being considered new matter with a new filing date.

### The '068 Application and the Instantbull Website 2006

90.     U.S. Application No. 12/334,068 (hereinafter the "'068 Application"), titled "Hyperlink with Graphical Cue," was filed on December 12, 2008, as a continuation to the '957 Application. Copies of the documents initially filed for the '068 Application are attached as **Exhibit 14.** The '068 Application included figures mirroring figures 5A and 5B of the '140 Provisional Application, but were absent in the '957 Application.

91.     With the exception of the "Related Applications" paragraph of the written description, the entirety of the as-filed disclosure of the '068 Application inclusive of the written description, abstract, claims, and drawings is identical in every respect to the '140 Provisional Application.

92.     None of the paragraphs of the written specification or the drawings of the '068 Application as filed are present in the '957 Application. Thus, all matter filed in the '068 Application is new matter with a new filing date of December 12, 2008, and Aloft is at best entitled to a priority date of December 12, 2008.

93.     However, in July 2006, Instantbull, LLC launched a website which featured, among

other elements, top-level menu items with hidden drop-down submenus containing hyperlinks. When a user clicked on one of these hyperlinks, content from the linked destination website would be displayed within an embedded frame on the Instantbull home page, allowing the user to browse content on external websites without navigating away from the Instantbull interface. This functionality is directly pertinent to claimed "Hyperlink with Graphical Cue," as seen on the home page of the Instantbull Website from July 22, 2006 ("the Instantbull Website").  When the user hovers over the menu item "Markets" to reveal the sub-menu and selects the "Forbes" hyperlink on the Instantbull Website, the content from the linked destination, www.forbes.com/equities, is displayed within the embedded frame.

94.     As shown by the Instantbull Website, the claimed "Hyperlink with Graphical Cue" was in public use or on-sale more than two years before earliest priority date of the '068 Application. Therefore, the subject matter of the '068 Application was anticipated by the Instantbull Website, rendering the '068 Application and all child applications claiming priority to the '068 Application, including the Asserted Patent, invalid under the public use or on sale bar set forth in 35 U.S.C. § 102(b).

95.     Prior art and evidence of public use and sale to be relied on at trial will be identified as required by 35 U.S.C. § 282 and/or any order entered by the Court.

96.     The claims of the Asserted Patent are also invalid pursuant to 35 U.S.C. 112 and/or 35 U.S.C. 132 for failure to comply with the written description requirement and/or for indefiniteness, including, as will be discussed herein below, as it relates to the prohibition against adding 'new matter' to a continuation.

97.     The aforementioned controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Nouryon may ascertain its rights and obligations regarding the Asserted Patent.

98.     Nouryon respectfully seeks a judicial declaration that the Asserted Patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 132.

## COUNT III
## DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 10,372,793 DUE TO INEQUITABLE CONDUCT

99.     Nouryon repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

***Duty to Disclose Information Material to the Examination***

100.     Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose to the USPTO all information known to that individual to be material to patentability. This duty extends from the time the application was filed until the issuance of the patent.

101.     The Asserted Patent descends from a line of patent applications and patents filed by interrelated parties. At each step leading to the Asserted Patent, the parties failed in their duty of candor and good faith. The relevant patent applications, patents, filers, entities, and assignments are outlined in the table below and described in further detail in the proceeding paragraphs.

| Application/ Patent | Filing Date/Issue Date | Filer | Entity | Assignment History |
|---|---|---|---|---|
| 11/384,957/ 7,529,795 | 3-20-06/ 5-5-09 | Robert Poltkin | Stragent Technologies, LLC | Stragent Technologies, LLC (11-11-08); Stragent, LLC (12-31-08); Aloft Media, LLC (8-21-09); Boadin Technology, LLC (11-12-11); Stragent, LLC (11-25-14); Jenam Tech, LLC (12-2-16) |
| 12/334,068 (continuation of '957 Application)/ 8,682,961 | 12-12-08/ 3-25-14 | Kevin J. Zilka | Stragent Technologies, LLC | Stragent, LLC (12-31-08); Aloft Media, LLC (4-21-09); Boadin Technology, LLC (11-12-11); Jenam Tech, LLC (11-25-14); Stragent, LLC (11-25-14); Aloft Media, LLC (12-2-16) |

| 12/334,093/ 8,683,003 | 12-12-08/ 3-25-14 | Kevin J. Zilka | Stragent Technologies, LLC | Stragent, LLC (12-31-08); Aloft Media, LLC (4-21-09); Boadin Technology, LLC (11-12-11) Jenam Tech, LLC (11-25-14); Stragent, LLC (11-25-14); Aloft Media, LLC (12-2-16) |
|---|---|---|---|---|
| 14/224,002 (continuation of '068 Application)/ 10,042,823 | 3-24-14/ 8-7-18 | Patrick E. Caldwell | Boadin Technology, LLC | Stragent Technologies, LLC (11-11-08); Stragent, LLC (12-31-08); Aloft Media, LLC (4-21-09); Boadin Technology, LLC (11-12-11); Stragent, LLC (11-25-14); Jenam Tech, LLC (11-25-14); Aloft Media, LLC (12-2-16) |
| 15,721,939 (continuation of '002 Application)/ 10,078,623 | 10-1-17/ 9-18-18 | Patrick E. Caldwell | Aloft Media LLC | |
| 16,056,487 (continuation of '002 Application)/ 10,691,874 | 8-6-18/ 6-23-20 | Patrick E. Caldwell | Aloft Media LLC | |
| 16,243,044 (continuation of '487 Application)/ 10,372,793 | 1-8-19/ 8-6-19 | Patrick E. Caldwell | Aloft Media LLC | |

102.    As shown in the figure below, the Asserted Patent stems from the '957 Application. The '044 Application which led to the Asserted Patent was filed as a continuation of the '487 Application. The '487 Application was filed as a continuation of the '002 Application. The '002 Application was filed as a continuation of the '068 Application. The '068 Application was filed as a continuation of the '957 Application. References known at the time of the '068 Application (and other applications thereafter), including the '044 Application, were not disclosed to the examiners:

| '957 Application → '068 Application → '002 Application → '487 Application → '044 Application |
|---|
| (3-20-06)          (12-12-08)          (3-24-14)          (8-6-18)          (1-8-19) |

103.    As shown in the table below, the parties involved in the chain of applications leading

to the Asserted Patent are interrelated and had knowledge of the relevant references that were not disclosed to the USPTO.

| Person/Entity | Affiliation |
|---|---|
| Kevin J. Zilka | Attorney for Stragent Technologies, LLC<br>President of Stragent Technologies, LLC<br>President of Stragent, LLC |
| Patrick E. Caldwell | Attorney for Aloft Media, LLC<br>Attorney for Stragent Technologies, LLC<br>Attorney for Boadin Technology, LLC |
| Christopher E. Edgeworth | Attorney<br>President of Aloft Media, LLC |
| Andrew Gordon | Managing member of Aloft Media, LLC<br>Executive Vice President of Stragent, LLC<br>Managing member of Boadin Technology, LLC<br>Managing member of Jenam Tech, LLC<br>Listed on assignments between Stragent Technologies, LLC, Stragent, LLC, Aloft Media, LLC, Boadin Technology, LLC, and Jenam Tech, LLC |
| Aloft Media, LLC | Same address as Stragent, LLC<br>Same address as Jenam Tech, LLC<br>Same attorney as Stragent, LLC<br>Same attorney as Stragent Technologies, LLC<br>Same attorney as Boadin Technology, LLC<br>Same management as Stragent Technologies, LLC<br>Same management as Stragent, LLC<br>Same management as Boadin Technology, LLC<br>Same management as Jenam Tech, LLC |
| Stragent Technologies, LLC | Same attorney as Aloft Media, LLC<br>Same attorney as Boadin Technology, LLC<br>Same management as Aloft Media, LLC<br>Same management as Stragent, LLC<br>Same management as Boadin Technology, LLC<br>Same management as Jenam Tech, LLC |
| Stragent, LLC | Same address as Aloft Media, LLC<br>Same address as Jenam Tech, LLC<br>Same attorney as Aloft Meda, LLC<br>Same attorney as Stragent Technologies, LLC<br>Same attorney as Boadin Technology, LLC<br>Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC<br>Same management as Boadin Technology, LLC<br>Same management as Jenam Tech, LLC |
| Boadin Technology, LLC | Same attorney as Stragent, LLC<br>Same attorney as Stragent Technologies, LLC<br>Same attorney as Boadin Technology, LLC |

| | |
|---|---|
| | Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC<br>Same management as Stragent, LLC<br>Same management as Jenam Tech, LLC |
| Jenam Tech, LLC | Same address as Stragent, LLC<br>Same address as Aloft Media, LLC<br>Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC<br>Same management as Stragent, LLC<br>Same management as Boadin Technology, LLC<br>Same management as Boadin Technology, LLC Same management as Jenam Tech, LLC |
| Stragent, LLC | Same address as Aloft Media, LLC<br>Same address as Jenam Tech, LLC<br>Same attorney as Aloft Meda, LLC<br>Same attorney as Stragent Technologies, LLC Same attorney as Boadin Technology, LLC Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC Same management as Boadin Technology, LLC Same management as Jenam Tech, LLC |
| Boadin Technology, LLC | Same attorney as Stragent, LLC<br>Same attorney as Stragent Technologies, LLC Same attorney as Boadin Technology, LLC Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC Same management as Stragent, LLC<br>Same management as Jenam Tech, LLC |
| Jenam Tech, LLC | Same address as Stragent, LLC<br>Same address as Aloft Media, LLC<br>Same management as Aloft Media, LLC<br>Same management as Stragent Technologies, LLC<br>Same management as Stragent, LLC<br>Same management as Boadin Technology, LLC |

57333378.1

104.    Aloft Media, through its attorneys, management, and related companies, has been involved with every patent application and patent leading up to the '044 Application and Asserted Patent and deceived the USPTO throughout by failing to cite material references of which it was aware. Due to this inequitable conduct, the Asserted Patent is unenforceable.

### A.    Failure to Disclose Material Information ('068 Application)

105.    On December 12, 2008, Attorney Zilka filed several patent applications on behalf of Stragent Technologies, LLC as continuations of the first filed '957 Application. For the purposes of this section of the complaint, the relevant continuations filed on this date were U.S. Application No. 12/334,068 (hereinafter the "'068 Application") **(Exhibit 14)** and U.S. Application No. 12/334,093 (hereinafter the "'093 Application") **(Exhibit 15).**

106.    The abstract, specifications, and drawings of the '068 Application and the '093 Application were identical at the time of filing. Both were copies of the '140 Provisional Application. The subject matter of the claims submitted in each application were substantially similar.

107.    The '068 Application and the '093 Application were assigned by Stragent Technologies, LLC to Stragent, LLC on December 31, 2008 **(Exhibit 16).** On February 9, 2009, Attorney Zilka, acting as president of Stragent, LLC, transferred power of attorney for these matters from himself to Attorney Christopher M. Edgeworth. The '068 Application and the '093 Application were then assigned from Stragent, LLC to Aloft Media, LLC on April 21, 2009 **(Exhibit 17).** Aloft Media has the same address as Stragent, LLC.

108.    On January 29, 2010, Attorney Edgeworth, then president of Aloft Media, LLC, transferred power of attorney in these matters to Attorney Patrick E. Caldwell **(Exhibit 18).**

109.    Thereafter, the '068 Application and the '093 Application were assigned from Aloft Media to Boadin Technology, LLC on November 12, 2011 **(Exhibit 19).** On information and belief,

Andrew Gordon was the managing member of Boadin Technology, LLC at the time of the assignment **(Exhibit 20).**

110.    Andrew Gordon is the current managing member of Defendant Aloft Media.

111.    On September 17, 2012, a Final Rejection was issued to Attorney Caldwell, as well as to Andrew Gordon at Andrew.gordon@stragent.com. This Office Action rejected the claim under 35 U.S.C. 103 as being unpatentable over Benson, U.S. 7,913,185 in view of Kavner, U.S. 6,366,947 **(Exhibit 21)**.

112.    On January 17, 2013, Attorney Caldwell filed a responsive communication on behalf of Applicant Boadin Technology specifically acknowledging these two references in writing, indicating Attorney Caldwell and Andrew Gordon had actual knowledge of these relevant and material references **(Exhibit 22).**

113.    On September 17, 2012, the Examiner further cited Solotko, U.S. Publication No. 2008/0103889 as relevant to the prosecution of the '093 Application **(Exhibit 23).**

114.    On January 17, 2013, Attorney Caldwell on behalf of Boadin Technology submitted an Information Disclosure Statement, disclosing Shuster et al., U.S. Publication No. 2010/0287368, and Armstrong et al., U.S. Publication No. 2012/0066340, to the Examiner **(Exhibit 24)**.

115.    On April 29, 2013, the Examiner cited Thakur, U.S. Patent No. 7,895,644, Soroca U.S. Publication No. 2010/0094878, and Weber, U.S. Publication No. 2008/0052372, as relevant to the prosecution of the '093 Application **(Exhibit 25).**

116.    The co-pending '068 Application issued as U.S. Patent No. 8,682,961 on March 25, 2014 **(Exhibit 26)**.

117.    Attorney Caldwell, Boadin Technology, and Andrew Gordon did not, at any time during the prosecution of the '068 Application, disclose any of the following references to the Examiner **(Exhibit 27):**

- Benson, U.S. 7,913,185
- Kavner, U.S. 6,366,947
- Solotko, U.S. Publication No. 2008/0103889
- Thakur, U.S. Patent No. 7,895,644
- Soroca, U.S. Publication No. 2010/0094878
- Weber, U.S. Publication No. 2008/0052372
- Shuster et al., U.S. Publication No. 2010/0287368
- Armstrong et al., U.S. Publication No. 2012/0066340

118.    None of the foregoing eight references are listed on the face of U.S. Patent No. 8,682,961 **(Exhibit 26)**.

119.    The Examiner did not consider any of these eight references in his examination of the '068 Application.

120.    The references not cited in the prosecution of the '068 Application were material to a reasonable examiner in deciding whether to allow the '068 Application because, among other things, they were cited by the Examiner in the prosecution of the '093 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '068 Application.

121.    Boadin Technology, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '068 Application.

122.    Failure to cite to the USPTO references of which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

123.    Further, Attorney Caldwell (USPTO Registration No. 44,580) and Andrew Gordon (USPTO Registration No. 64,517) are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. The most reasonable inference is that failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the USPTO.

124.    Boadin Technology, Attorney Caldwell, and Andrew Gordon committed inequitable

conduct by failing to disclose the known material references to the USPTO during the prosecution of the '068 Application.

### B.  *Failure to Disclose Material Information ('002 Application)*

125.   The references discussed above were not disclosed to the Examiner by the Applicants, Attorney Caldwell, or Andrew Gordon during the prosecution of the U.S. Application No. 14/224,002 (hereinafter the "'002 Application").

126.   U.S. Application No. 14/224,002 was filed by Attorney Caldwell on behalf of Applicant Boadin Technology, LLC on March 24, 2014, as a continuation of the '068 Application, with similar specification, drawings, and claims to the '068 Application and the '093 Application. Copies of the documents initially filed for the '002 Application are attached as **Exhibit 28.**

127.   On November 25, 2014, the '002 Application was assigned from Boadin Technology, LLC to Stragent, LLC **(Exhibit 29)** and then from Stragent, LLC to Jenam Tech, LLC **(Exhibit 30).** Both assignments are signed by Andrew Gordon as managing member of Boadin Technology, LLC and as EVP of Stragent, LLC. Andrew Gordon is also managing member of Jenam Tech, LLC, which has the same address as Stragent, LLC and Aloft Media. The '002 Application was then assigned from Jenam Tech, LLC to Aloft Media on December 02, 2016 **(Exhibit 31).** On information and belief, Andrew Gordon has been the managing member of Aloft Media since at least December 2, 2016. On information and belief, at all times during the prosecution of the '002 Application, Andrew Gordon was the managing member of all Applicants.

128.   Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew Gordon did not, at any time during the prosecution of the '002 Application, disclose any of the following references to the Examiner **(Exhibit 32),** nor were these references considered by the Examiner in any parent application to the '002 Application:

- •     Benson, U.S. 7,913,185
- •     Kavner, U.S. 6,366,947

- Solotko, U.S. Publication No. 2008/0103889
- Thakur, U.S. Patent No. 7,895,644
- Soroca, U.S. Publication No. 2010/0094878
- Weber, U.S. Publication No. 2008/0052372
- Shuster et al., U.S. Publication No. 2010/0287368
- Armstrong et al., U.S. Publication No. 2012/0066340

129.    Of these eight references, only one, Benson U.S. Patent No. 7,913,185, was listed on the face of U.S. Patent No. 10,042,823 which issued from the '002 Application **(Exhibit 33).**

130.    Benson was independently located by and cited by the Examiner during prosecution of the '002 Application and was the subject of a rejection of the claims under 35 U.S.C. §§ 102 and 103 **(Exhibit 34).** The other seven references were not considered by the Examiner for the '002 Application.

131.    Again, the references not cited in the prosecution of the '002 Application were material to a reasonable examiner in deciding whether to allow the '002 Application because, among other things, they were cited by the Examiner in the prosecution of the '093 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '002 Application.

132.    Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '002 Application.

133.    Failure to cite the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

134.    Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. The most reasonable inference is that failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the USPTO.

135.    Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew

Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '002 Application.

### C.    Failure to Disclose Material Information ('487 Application)

136.    The references discussed above were not disclosed to the Examiner by Aloft Media, Attorney Caldwell, or Andrew Gordon during the prosecution of the subsequent U.S. Application No. 16/056,487 (hereinafter the "'487 Application") or U.S. Application No. 16/243,044.

137.    On October 1, 2017, Attorney Caldwell filed U.S. Application No. 15/721,939 (hereinafter the "'939 Application") on behalf of Defendant, Aloft Media as a continuation of the '002 Application **(Exhibit 35).** The '939 Application was co-pending with the '487 Application which was filed on August 6,2018 by Attorney Caldwell on behalf of Aloft Media as a continuation of the '002 Application **(Exhibit 36).** The '939 Application and the '487 Application had identical disclosures to the '002 Application, and cover subject matter substantially similar to the '093 Application. As stated above, on information and belief, Andrew Gordon has been the managing member of Aloft Media from at least December 2, 2016, to the present.

138.    On December 15, 2017, a Non-Final Rejection was issued to Attorney Caldwell regarding the '939 Application. This Office Action rejected the claims under 35 U.S.C. 103 as being unpatentable over NPL - Microsoft, Lisa Wollin-Creating a JavaScript Drop-Down Menu in FrontPage in view of Buchmiller et. al., U.S. Publication No. 2003/0187706 **(Exhibit 37).**

139.    On December 18, 2017, Attorney Caldwell filed a responsive communication on behalf of Aloft Media specifically acknowledging these two references in writing, indicating Attorney Caldwell and Andrew Gordon had actual knowledge of these relevant and material references **(Exhibit 38).**

140.    On December 15, 2017, and March 28, 2018, the Examiner further cited Huynh, U.S. Publication No. 2002/0198909 and Cohen U.S. Publication No. 2003/0184582 as relevant to

the prosecution of the '939 Application **(Exhibit 39)**.

141.    The co-pending '487 Application issued as U.S. Patent No. 10,691,874 on June 23,

2020 **(Exhibit 40)**.

142.    Aloft Media, Attorney Caldwell, and Andrew Gordon did not, at any time during the

prosecution of the '487 Application, disclose any of the following references to the Examiner

**(Exhibit 41),** nor were these references considered by the Examiner in any parent application to the

'487 Application:

- Buchmiller et. al., U.S. Publication No. 2003/0187706
- Kavner, U.S. 6,366,947
- Solotko, U.S. Publication No. 2008/0103889
- Thakur, U.S. Patent No. 7,895,644
- Soroca, U.S. Publication No. 2010/0094878
- Weber, U.S. Publication No. 2008/0052372
- Huynh, U.S. Publication No. 2002/0198909
- Cohen, U.S. Publication No. 2003/0184582
- Shuster et al., U.S. Publication No. 2010/0287368
- Armstrong et al., U.S. Publication No. 2012/0066340

143.    None of the foregoing ten references are listed on the face of U.S. Patent No.

10,691,874 which issued from the '487 Application **(Exhibit 40)**.

144.    These ten references were not considered by the Examiner for the '487 Application.

145.    Again, the references not cited in the prosecution of the '487 Application were

material to a reasonable examiner in deciding whether to allow the '487 Application because,

among other things, they were cited by the Examiners in the prosecution of the '093 Application

and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously

cited by Applicant during examination of the '093 Application, each of which has identical or

similar specification, subject matter, and claims to the '487 Application.

146.    Aloft Media, Attorney Caldwell, and Andrew Gordon had knowledge of the

withheld references during the prosecution of the '487 Application.

147.    Failure to cite the USPTO references which Attorney Caldwell and Andrew Gordon

57333378.1

were aware, and knew were material, suggests intent to deceive the USPTO.

148.    Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. The most reasonable inference is that failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the USPTO.

149.    Aloft Media, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '487 Application.

### D.    *Failure to Disclose Material Information ('044 Application)*

150.    The references discussed above were not disclosed to the Examiner by Aloft Media, Attorney Caldwell, or Andrew Gordon during the prosecution of the subsequent U.S. Application No. 16/243,044.

151.    U.S. Application No. 16/243,044 (hereinafter the "'044 Application" or the "Asserted Patent Application") was filed by Attorney Caldwell on behalf of Defendant Aloft Media on January 8, 2019 as a continuation of the '487 Application with identical written description to the '487 Application and the '939 Application and covering substantially similar subject matter as the '093 Application. Copies of the initial filings for the '044 Application are attached as **Exhibit 42**.

152.    Aloft Media, Attorney Caldwell, and Andrew Gordon did not, at any time during the prosecution of the '044 Application, disclose any of the following references to the Examiner **(Exhibit 43)** nor were these references considered by the Examiner in any parent application to the '044 Application:

- •    Buchmiller et. al., U.S. Publication No. 2003/0187706
- •    Kavner, U.S. 6,366,947
- •    Solotko, U.S. Publication No. 2008/0103889

- • Thakur, U.S. Patent No. 7,895,644
- • Soroca, U.S. Publication No. 2010/0094878
- • Weber, U.S. Publication No. 2008/0052372
- • Huynh, U.S. Publication No. 2002/0198909
- • Cohen, U.S. Publication No. 2003/0184582
- • Shuster et al., U.S. Publication No. 2010/0287368
- • Armstrong et al., U.S. Publication No. 2012/0066340

153.    None of the foregoing ten references are listed on the face of U.S. Patent No. 10,372,793 (the Asserted Patent) which issued from the '044 Application **(Exhibit 1)**.

154.    These ten references were not considered by the Examiner for the '044 Application.

155.    Again, the references not cited in the prosecution of the '044 Application were material to a reasonable examiner in deciding whether to allow the '044 Application because, among other things, they were cited by the Examiners in the prosecution of the '093 Application and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, each of which have identical or similar specification, subject matter, and claims to the '044 Application.

156.    Aloft Media, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '044 Application.

157.    Failure to cite the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

158.    Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. The most reasonable inference is that failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the USPTO.

159.    Aloft Media, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '044 Application. The Asserted Patent would not have been issued had such references been

disclosed. Consequently, the Asserted Patent is unenforceable.

160.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Nouryon may ascertain its rights and obligations regarding the Asserted Patent.

161.    Nouryon respectfully seeks a judicial declaration that the Asserted Patent is unenforceable.

### E.    Materially False Statements to the USPTO

162.    Patent applicants, inventors, and their attorneys all owe a duty of candor to the USPTO which extends to ensuring that no "new matter" is entered in a patent application other than a continuation-in-part (CIP) application, at the time the CIP is filed. This duty extends throughout the prosecution of a patent application.

163.    Throughout the course of the prosecution which ultimately led to the grant of the Asserted Patent, several affirmative representations were made to the USPTO by Aloft Media, its predecessors in interest, and the prosecuting attorneys involved that the introduction of amended specifications and new drawings added "no new matter" to the first filed '957 Application.

164.    On December 12, 2008, U.S. Application No. 12/334,068 was filed by Attorney Kevin J. Zilka on behalf of Applicant Stragent Technologies, LLC. The '068 Application was filed with a transmittal form indicating that it was a "Continuation" application, not a "Continuation-in-part" application, of the first filed '957 Application under 35 U.S.C. 120. **(Exhibit 14).** The transmittal form is signed by Attorney Kevin J. Zilka. Accordingly, Applicant and Attorney Zilka certified to the USPTO that the disclosure of the '068 Application contained no new matter and that the disclosure of the '068 Application was the same as that of the first filed '957 Application.

165.    As discussed above, the entirety of the '068 Application is unsupported by the '957 Application and constitutes new matter. This new matter was submitted to the USPTO by Attorney

34

Zilka on behalf of Applicant. Zilka and Applicant violated their duty of candor via this submission.

166.    On April 13, 2009, the Applicant filed replacement drawings for the '068 Application. In this filing, Attorney Christopher M. Edgeworth stated: "No new matter is added by the replacement drawing sheets" **(Exhibits 44-45).** This is again a false certification that the '068 Application is fully supported by the '957 Application, in violation of Attorney Edgeworth and Applicant's duty of candor.

167.    The USPTO issued a final rejection of the '068 Application on June 10, 2011, rejecting all claims. Notably, the Examiner included a document titled "Examiner's search strategy and results" which shows in detail how the Examiner searched the prior art based on the claims in the patent **(Exhibit 46).** This demonstrates that the Examiner relied on the Applicant's and its attorneys' representations to the USPTO that the application was a "continuation of" the '957 Application with a priority date of March 20, 2006.

168.    However, considering that the '068 Application is essentially a copy of the '140 Provisional Application, has nothing in common with the '957 disclosure, cannot trace priority to the '140 Provisional Application, and does not incorporate by reference the '140 Provisional Application, the date searched by the Examiner should have been no earlier than December 12, 2008, the filing date of the '068 Application.

169.    On October 11, 2011, a replacement written specification and replacement drawing sheets for the '068 Application were filed by Attorney Patrick E. Caldwell on behalf of Applicant **(Exhibit 47).** Notably, this amendment adds the first reference to the '140 Provisional Application. The amended Related Applications section states: "The present application is a continuation of U.S. Application Ser. No. 11/384,957 filed Mar. 20, 2006, now issued under U.S. Patent No.: 7,529,795, which is incorporated herein by reference and which, in turn, incorporates by reference U.S. Provisional Application Ser. No. 60/784,141 filed Mar. 20, 2006 and U.S. Provisional Application

35

Ser. No. 60/784,140 filed Mar. 20, 2006, both of which are incorporated herein by reference." (Ex. 45 at p. 2.)

170.    As originally filed, this section read: "The present application is a continuation of U.S. application serial number 11/384,957 filed 03/20/2006, which is incorporated herein by reference. The present application is also related to U.S. provisional application serial number 60/784,141 filed 03/20/2006, which is incorporated herein by reference." (*Id.*)

171.    As described above, the '957 Application cannot and does not incorporate the '140 Provisional Application by reference. Additionally, the '140 Provisional Application cannot be incorporated by reference into the '068 Application.

172.    The October 11,2011, amendment additionally added at least 70 new paragraphs of text and six new drawing figures to the '068 Application. (*Id.* at p. 2-24, Figs. New Figs. 1-4C.)

173.    This amendment was submitted with a statement signed by Attorney Caldwell on behalf of the Applicant which read: "I hereby state that the accompanying substitute specification contains no new matter over that contained in the above-identified application originally filed." (*Id.* at 4.)

174.    The USPTO relied on the statement by Attorney Caldwell in examining the '068 Application and took the sworn statement as proof that the substitute specification included no new matter.

175.    For all the reasons above, Attorney Caldwell's statement was visibly and objectively false. The only material that is not impermissible "new matter" would be the matter disclosed by the first filed '957 Application. Thus, while the '068 Application as filed contained nearly 100% new matter as against the first filed '957 Application, the amendments to the application on October 11, 2011, added *even more* new matter.

176.    On August 8, 2013, the USPTO issued a Notice of Allowance and supplied another

document titled "Examiner's search strategy and results" **(Exhibit 48).** Once again, relying on the statements made by the Applicants and prosecuting attorneys, the USPTO used the March 20,2006, filing date of the first filed '957 Application as the date for the prior art search.

177.    Before the '068 Application issued as U.S. Patent No. 8,682,961 with the new matter on March 25, 2014, Attorney Caldwell filed U.S. Application No. 14/224,002 (hereinafter the "'002 Application") on behalf of Boadin Technology on March 24, 2014, as a "continuation" application tracing priority to the '068 Application **(Exhibit 28).**

178.    In preparing and filing the '002 Application, Attorney Caldwell and Applicant simply re-filed the substitute disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application. Thus, the '002 Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Applicant claimed priority to the first filed '957 Application.

179.    Again, the USPTO relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches **(Exhibit 49).**

180.    On November 13, 2017, Attorney Caldwell and Applicant filed a "Substitute Statement in Lieu of an Oath or Declaration." This substitute statement was filed in the name of Aloft Media, LLC which was indicated as "assignee" and signed by Andrew Gordon, having a title of "Manager" **(Exhibit 50).**

181.    The substitute statement indicated that the "Inventor cannot be found or reached after diligent effort."

182.    Nothing in the file wrapper indicates what steps were taken to locate the inventor during the course of the prosecution of the '002 Application.

183.    Neither the Applicants, nor Gordon, nor Caldwell have ever explained to the USPTO or to the public why inventor Arav could not be located over the course of four years (or the four

years that followed with subsequent applications). This is particularly suspicious as Defendants'

website lists several of Gal Arav's patents as an available "portfolio" for licensing:

**ALOFT MEDIA**                                        Home    Portfolios ⌄    Background    Contact

The Gal Arav Portfolio consists of the following assets:

| USPN | USPAN | Filing Date | Link |
|---|---|---|---|
| 7,529,795 | 11/384,957 | 03-20-2006 | Link |
| 7,849,148 | 12/334,063 | 12-12-2008 | Link |
| 7,856,472 | 12/334,037 | 12-12-2008 | Link |
| 8,180,829 | 12/435,296 | 05-04-2009 | Link |
| 8,219,615 | 13/099,342 | 05-02-2011 | Link |
| 8,219,906 | 13/099,345 | 05-02-2011 | Link |
| 8,682,961 | 12/334,068 | 12-12-2008 | Link |
| 8,683,003 | 12/334,093 | 12-12-2005 | Link |
| 8,700,704 | 12/334,024 | 12-12-2008 | Link |
|  | 14/224,002 | 03-24-2014 | Link |
|  | 60/781,141 | 03-20-2006 | n/a |
|  | 60/784,140 | 03-20-2006 | n/a |
|  | PCT/US07/06902 | 03-20-2007 | Link |

*See* https://aloft-media.com/arav.html (last accessed February 18, 2026).

184.    The substitute specification includes a different residence than was reported by the

inventor in the '957 Application, indicating that the Applicants and Attorney Caldwell were aware

that the inventor had relocated to HaMachtarot Street 6A, #4 Raanana, Israel 43550. It's unclear

from the record why this address was not used to contact Arav.

185.    On August 6, 2018, during the pendency of the '002 Application, Attorney Caldwell

filed U.S. Application 16/056,487 (hereinafter the "'487 Application") on behalf of Aloft Media as

a continuation of the '002 Application **(Exhibit 36).**

186.    In preparing and filing the '487 Application, Attorney Caldwell and Aloft Media

again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068

Application completely lacked support from the first filed '957 Application. Thus, the '487

38

Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Aloft Media claimed priority to the first filed '957 Application.

187.    Again, the Examiner relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches **(Exhibit 51)**.

188.    On January 8, 2019, during the pendency of the '487 Application, Attorney Caldwell filed U.S. Application 16/243,044 (hereinafter the "'044 Application") on behalf of Aloft Media as a continuation of the '487 Application, claiming priority to the '957 Application **(Exhibit 42)**.

189.    In preparing and filing the '044 Application, Attorney Caldwell and Aloft Media again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application. Thus, the '044 Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Aloft Media claimed priority to the first filed '957 Application.

190.    Again, the Examiner relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches **(Exhibit 52)**.

191.    Additionally, in the '068 Application, the '002 Application, the '487 Application, and the '044 Application, the Applicants and prosecuting attorneys make representations to the USPTO that the Applicant is the owner of the invention represented in these Applications.

192.    The '140 Provisional Application on which each of these Applications is directly based was never assigned from Instantbull, LLC to any Applicant. As discussed above, the '957 Application which was assigned to the Applicants contains no disclosure which supports the invention claimed by the Applicants in the '068 Application, the '002 Application, the '487 Application, or the '044 Application. Any claims of ownership of the invention disclosed in the '140 Provisional Application are materially false.

### F.    Summary

193.    Based on the above, unmistakably and materially false representations were made by the Applicants and prosecuting attorneys with the specific intent of deceiving the USPTO.

194.    "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense v. Becton, Dickinson, & Co.,* 649 F.3d 1276, 1290 (Fed. Cir. 2011).

195.    The prosecuting attorneys and Applicants knew that the new matter was not in the original disclosure.

196.    The prosecuting attorneys and Applicants were highly motivated via personal financial gain to secure the patent claims and to exclude others from practicing the claimed invention.

197.    The prosecuting attorneys' and Applicant's actions in this case demonstrate a calculated course of action to deceive the USPTO through introduction of new matter into an application and to misrepresent the added material as not containing any new matter to obtain an earlier priority date.

198.    The March 20, 2006, priority date of the '957 application is particularly material in light of the Instantbull Website, which was active July 2006. The December 12, 2008, filing date of the '068 Application would render the '068 Application and all subsequent continuations invalid under 35 U.S.C. § 102.

199.    Further, the Applicants benefit from the subject matter introduced in the '068 Application continuing from the '957 Application because the Applicants did not have ownership of the invention claimed in the '068 Application. Instantbull, LLC assigned rights in the '957 Application to Stragent Technologies, LLC, but Instantbull, LLC never assigned its '140 Provisional Application to any other party. Thus, the Applicants could not claim the subject matter in the '068 Application and all subsequent continuations unless it could be considered a proper

continuation of the matter in the first filed '957 Application which was assigned to them.

200.    All parties involved in the prosecution of the patent family had a duty to comply with 35 U.S.C. § 132 (MPEP 2422.07) to ensure that new matter was not added. Their materially false statements in light of that duty, evinces that the most reasonable inference is that Aloft Media, its predecessors in interest, and the prosecuting attorneys made those statements with the intent to deceive the USPTO.

201.    The misrepresentations were made by Aloft Media, its predecessors in interest, and the prosecuting attorneys with the specific intent to deceive the USPTO, which would not have issued the Asserted Patent absent the misrepresentations. It is notable that the same names and attorneys appear all over the prosecuting documents and chain of title for the Asserted Patent, again displaying a calculated scheme to benefit from an ill-gotten earlier priority date that spans back over a decade.

202.    These affirmative misrepresentations not only benefited Aloft Media, but also negatively impacted the entities which license Aloft Media's patents. These affirmative misrepresentations thus negatively impacted the entire public at large and worked to erode confidence in the United States Patent Act.

203.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Nouryon may ascertain its rights and obligations regarding the Asserted Patent.

204.    In view of the foregoing, Nouryon respectfully seeks a judicial declaration that the Asserted Patent is unenforceable for failure to comply with the duty of candor and good faith in dealing with the USPTO.

## COUNT IV
### DECLARATION OF UNENFORCEABILITY OF
### U.S. PATENT NO. 10,372,793 DUE TO PROSECUTION LACHES

57333378.1

205.    Nouryon repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

206.    As described above, there was an unreasonable and unexplained delay in prosecuting the Asserted Patent.

207.    Additionally, the overwhelming amount of prior art cited to the Examiner (as opposed to the much more relevant prior art ***not*** disclosed by Applicants) demonstrates an intent to overwhelm and inundate the USPTO.

208.    Nouryon and others have been prejudiced by this unreasonable and unexplained delay.

209.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to prosecution laches. A judicial declaration is necessary and appropriate so that Nouryon may ascertain its rights and obligations regarding the Asserted Patent.

210.    Nouryon respectfully seeks a judicial declaration that the Asserted Patent is unenforceable due to prosecution laches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, NOURYON USA LLC, respectfully requests the following relief:

A.    A declaration that Nouryon has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,372,793, whether literally or under the doctrine of equivalents;

B.    A declaration that each claim of U.S. Patent No. 10,372,793 is invalid as a matter of law;

C.    A declaration that U.S. Patent No. 10,372,793 is unenforceable against Nouryon under the doctrine of inequitable conduct and/or prosecution laches;

D.    An order declaring that this is an exceptional case and awarding Nouryon its costs,

57333378.1

expenses, disbursements, and reasonable attorneys' fees under 35 U. S.C. § 285 and 28 U. S.C. § 1927;

E.    An order requiring each Defendant to post a bond in the amount of not less than two hundred and fifty thousand dollars ($250,000.00), and;

F.    All such other and further relief, both at law and in equity, which the Court deems just and proper.

57333378.1

Dated: February 23, 2026     **SAUL EWING LLP**

        */s/ Jennifer M. Becnel-Guzzo*
        Jennifer M. Becnel-Guzzo(#4492)
        1201 N. Market Street Suite 2300
        Wilmington, DE 19899-1266
        (302) 421-6800
        Jennifer.becnel-guzzo@saul.com

        *Attorneys for Plaintiff*